**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CINDY GAIL DANIEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08-CV-100-TLW** |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER AND OPINION**

Plaintiff Cindy Daniel seeks judicial review of a decision of the Commissioner of the Social

Security Administration denying Supplemental Security Income ("SSI") disability benefits.[1]  In

accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United

States Magistrate Judge.[2]  [Dkt. # 9].

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §

405(g) is limited to a determination of whether the record as a whole contains substantial evidence

to support the decision and whether the correct legal standards were applied.  See Briggs ex. rel.

---

[1]  Plaintiff's application also sought Disabled Adult Child's benefits based on the earning history of her parents.  To obtain these benefits, plaintiff needed to demonstrate, among other things, that she had a disability before attaining age 22 and that this disability continued without interruption through the date of her application.  See 42 U.S.C. § 402(d).  Because plaintiff alleges a disability on-set date after January 1, 2005, which is a date following her 22nd birthday, plaintiff did not meet her burden to qualify for Disabled Adult Child's benefits.  This issue apparently was not in dispute before the ALJ, and has not been raised by either party on appeal.

[2]  Plaintiff's June 16, 2005, application for disability benefits was denied initially and on reconsideration.  A hearing before the Administrative Law Judge ("ALJ "), John Volz, was held on September 27, 2007.  By decision dated November 6, 2007, the ALJ entered the findings that are the subject of this appeal.  The Appeals Court denied plaintiff's request for review on February 7, 2008.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027,1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).  Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

### Background

Plaintiff was born on April 6, 1967 [R. 57] and was 40 years old at the time of the hearing. Plaintiff has a twenty-four year old son [R. 348] and a  seven year old daughter.  [R. 349].  Plaintiff completed the 10th grade in high school, dropping out in the 11th grade because she was pregnant with her son.  [R. 361].  Plaintiff has never married.  [R. 18].  She apparently lived with her son's father for a time because she testified that she tried to get him up and tried "to get him to get a job," but he would "hardly ever work."  [Dkt. # 349].  As a result, plaintiff claims she had to work two or three jobs at a time.  [R. 348-9].  Plaintiff has formerly worked as a manager assistant [R. 129] and waitress [247] in the food industry for Taco-Mayo, Braum Ice Cream Stores, Kentucky Fried Chicken, Rib Crib and the Hickory House Restaurant in Sapulpa.  She has used Kelly Services for employment placement [R. 44-48] and her most recent work was as a house cleaner. [R. 129, 345].

2

In her SSI application, plaintiff claims to have been unable to work since January 1, 2005 [R. 49], as a result of depression, stress anxiety attacks, hypertension and heart problems.  [R. 57]. However, during the hearing, plaintiff testified that her disability resulted from swelling in her extremities, chest pains, heart problems [R. 346] and severe anxiety disorder [R. 353], and that the onset of her heart problems and all her other problems started right after she gave birth to her daughter.  [R. 349].

In assessing plaintiff's qualification for SSI based on her alleged disability, the ALJ found at step-one that plaintiff is currently unemployed.  At step two, the ALJ found that plaintiff has "generalized anxiety disorder and panic disorder without agoraphobia" and that in combination they constitute a severe mental or physical impairment.  [R. 15].  At step-three, the ALJ determined that plaintiff's combined severe impairments did not meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ adopted the assessment of Dr. Burnard Pearce, Ph.D. who conducted a psychiatric standardized evaluation technique on plaintiff [R. 144], finding that:

Plaintiff has no restrictions in daily living activities;

Plaintiff has mild difficulties in social functioning;

Plaintiff has moderate difficulties in concentration, persistence or pace; and

Plaintiff has experienced no episodes of decomposition.

[R 16].  The ALJ concluded that "because the claimant's mental impairments do not cause at least two marked limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria are not satisfied."  [R. 16].  At step-four the ALJ found  that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with

3

the following nonexertional limitations:  the claimant is limited to simple work under routine supervision [R. 15-16] and is capable of performing her past relevant work as a fast food worker, since this work does not require the performance of work-related activities precluded by her RFC assessment.  [R. 19].  The ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2005 through the date of his decision.  [R. 19].  In sum, the ALJ's evaluation was concluded at step-four of the five-step evaluation sequence in the ALJ's finding that plaintiff is capable of performing her past relevant work in the fast food industry.  See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[3]

In her instant appeal, plaintiff seeks reversal of the ALJ's determination claiming his decision is not supported by substantial evidence in the record.  Specifically plaintiff alleges the ALJ erred by:

(1)     Failing to consider at step- two that plaintiff's paranoia is a severe impairment, which results in difficulty keeping her focus, and worries that people are watching her.

(2)     Failing to include within his findings of severe impairments that plaintiff was diagnosed with hypochondriasis, a preoccupation with health issues.

(3)     Failing to mention evidence which supports plaintiff's mental disability, including the complete findings of the mental health consultative examination, and the complete assessment of the psychological consultative examination.

(4)     Failing to properly evaluate plaintiff's credibility in light of her emotional problems, which include paranoia and lack of reality; and her mother's testimony describing plaintiff's inability to function.

---

[3]  The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience.  Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

[Dkt. # 15 at 3-10].

## Discussion

As her first assignment of error, plaintiff claims the ALJ should have included paranoia in his RFC assessment based on a November 22, 2004, notation by a therapist at the CREOKS Mental Health Center that plaintiff "appears very paranoid & histrionic" believing that people are following her [R. 126] and an April 15, 2005, notation in a Client Assessment Record that plaintiff "continues to have paranoia in social settings." [R. 108]. The Court first notes that plaintiff did not claim paranoia as mental disability in her application for benefits or at the hearing before the ALJ. The introduction of paranoia as a disability was alleged by plaintiff's counsel in his post-hearing letter to the ALJ.

The ALJ addressed the symptoms of paranoia in his findings stating: "Mentally, the claimant does appear to have difficulty with keeping her focus. She also is preoccupied with health issues and worries that people are watching her (Exhibit 13F, at 14). Yet, these deficits alone do not constitute disability." [R. 19]. The ALJ's omission of paranoia as a severe impairment is clearly supported by plaintiff's medical records, which consistently show a medical diagnosis of anxiety and panic attacks, not paranoia.[4]

Further the transcript of the hearing before the ALJ does not support counsel's claim that

---

[4] Specifically, plaintiff was diagnosed with anxiety and/or panic attacks on the following treatment and consultation dates: January 31, 2002 [R. 185]; March 6, 2002 [R. 184]; July 29, 2002 [R. 181, 182]; January 27, 2003 [R. 187]; December 29, 2003 [R. 159]; March 18, 2004 [R. 177]; April 13, 2004 [R. 176]; May 18, 2004 [R. 175]; June 8, 2004 [R. 174]; July 19, 2004 [R. 173]; August 27, 2004 [R. 172]; November 13, 2004 [R. 170]; January 13, 2005 [R. 168-169]; May 31, 2005 [R. 165]; June 16, 2005 [R. 104]; September 13, 2005 [R. 154]; November 28, 2005 [R. 161-162]; January 30, 2006 [R. 152]; March 6, 2006 [R. 158]; October 6, 2005 [R.131]; October 12, 2005 [R. 138]; and November 7, 2005 [R. 143].

plaintiff's paranoia is disabling.  The ALJ offered counsel an opportunity to develop the record on this issue by inviting him to question his client.  Even using leading question in the direct examination of his client, counsel was unable to show that his client had "difficulty keeping her focus" or worried "that people are watching her."  The transcript contains the following colloquy:

| | |
|---|---|
| Counsel: | What do you worry about? |
| Plaintiff: | My father, my mother, my daughter.  My father is dying right now, he has an aneurism in his stomach and it's blown up like a balloon. |
| Counsel: | Okay.  Do you, your driving to places.  Does that have anything to do with thinking that people are watching you? |
| Plaintiff: | No, what? |
| Counsel: | Your driving to places rather than walking.  Does that have anything to do with people, your thinking that people watch you or is that a problem? |
| Plaintiff: | You know what, I don't even really go out that much.  I just try to, I've been so bad sick, I've been so bad sick – |
| ALJ: | No, Mr. Harlan, I didn't stop you but don't lead her that much. |
| Counsel: | All right. |
| ALJ: | I know you've got to lead yourself but to suggest the answer, please don't do that. |
| Counsel: | When you, do you go to stores, you do go to stores and shop from time to time? |
| Plaintiff: | Every once in a while, yeah. |
| Counsel: | Have you ever had times when you just had to leave the store? |
| Plaintiff: | Yes. |
| Counsel: | Why? |
| Plaintiff: | Just too many people, too many people, too many people around me.  You |

know, too many people in there, them hitting my feet or the, I've had to just turn around and walk right out of stores and if I get into any conversation with anybody you know, any kind of argument, I don't, I just, I'll turn around and walk off.  I can't deal with anything like that.  I don't even try.

Counsel:        Do people call your house on the telephone?

Plaintiff:        Yeah.

Counsel:        Do you answer the phone?

Plaintiff:        Not usually, no.  I usually don't.

Counsel:        Why?

Plaintiff:        If I'm not feeling good I won't answer the phone, no.  I'll just let it ring because I don't want to talk to anyone.

Counsel:        I don't have anymore questions of this witness, Judge.

[R. 361-363].  "In a social security disability case, the claimant bears the burden to prove her disability."  Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009).  Although an ALJ has a duty to develop the record, the duty is not unqualified.  The ALJ need only develop the record "consistent with the issues raised."  Id. at 1063, citing Henrie v. U.S. Dep't of Health & Human Serv., 13 F.3d 359, 360-61 (10th Cir. 1993).  On April 26, 2006, Laura Lochner Ph.D. reviewed all of plaintiff's medical evidence in the file [R. 180] and affirmed the RFC assessment made on November 7, 2005 by Burnard Pearce Ph.D. [R. 144] which was adopted by the ALJ in his decision.  [R.16].  Dr. Pearce noted that plaintiff's medical files show doctor visits and treatment for anxiety and some depression, but no inpatient mental health treatment and no diagnosis of histrionic personality features.  [R. 146].

The ALJ's determination is supported by substantial evidence in the record.  The record shows a few references to plaintiff appearing paranoid, exhibiting paranoia in social settings, and reference to a paranoid demeanor, but the record is devoid of a physician's diagnosis of paranoia.

7

Rather, plaintiff's treating physicians, including Dr. Sharon Noel, consistently list her diagnosis as anxiety, and at other times included depression.  See, e.g. [R. 182, 184, 185, 187, and 189]. Plaintiff's treating physicians have historically prescribed medication for the treatment of anxiety, and panic attacks.  Further, plaintiff's consistent complaint and purpose for seeking treatment was for anxiety and panic attacks.  The record does not show that plaintiff sought therapy for paranoia. In fact on the two clinical visits cited by plaintiff's counsel in which the notation was made that plaintiff appeared paranoid, her medical records also show that plaintiff did not believe she needed therapy [R. 125], was not happy about being made to participate in therapy [R. 126], and was not motivated for treatment, but was present because of DHS requirements.[5]  Further, even if untreated, there is no indication in the record that plaintiff's paranoia would prevent her from doing simple work under routine supervision as found by the ALJ.

On numerous occasions, the ALJ allowed plaintiff's counsel the opportunity to question his client regarding her mental and physical condition.  See e.g., [R. 350, 353, 354, 356, 358, 359, 360 and 361].   Again, the burden of proof was on plaintiff to prove that her paranoia was a severe impairment.  See Williams, 844 F.2d at 751 n. 2.  Counsel offered no testimony supporting plaintiff's purported disabling paranoia.

_____

[5]   The record shows numerous occasions where plaintiff failed to follow a prescribed treatment for mental health therapy and other indications that plaintiff felt better when participating in therapy.  For example, a notation on January 14, 2005, that "Clt did not complete tx [treatment] plan goals or criteria but is choosing to receive medication services w/PCP."  [R. 116].  Plaintiff's treating physician noted that plaintiff was, "seeing psychiatrist" and "feeling better."  [R. 166]. Plaintiff's refusal to complete a mental health treatment plan is grounds alone for the denial of benefits.  "Social Security regulations provide that claimants who fail, without good reason, to follow prescribed treatment will be denied benefits if it appears the treatment can restore the claimant's ability to work."  20 C.F.R. §§404.1530, 416.930; see also Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985).

8

As to her second assignment of error, plaintiff alleges the ALJ failed to mention in his findings plaintiff's "diagnosis of hypochondriasis." Plaintiff relies on a March 23, 2007, "diagnosis of hypochondriasis" shown on a Medicare Outpatient Preauthorization Form completed by a licensed professional counselor ("LPC"). [R. 234]. The preauthorization was requested in 2007 by the staff from CREOKS Mental Health Services to provide plaintiff with outpatient mental health treatment. [R. 234]. In a notation following the diagnosis, the LPC entered the following: "CLT has a persistent fear and feels excessive anxiety due to thinking she may possibly have a heart attack[,]is under too much stress regardless of the doctor telling her that her heart is fine and that she is having anxiety attacks. Previous dx [diagnosis] was GAD [general anxiety disorder] but symptoms better fit the change to hypochondriasis." [R. 234]. "Hypochondriasis" is a preoccupation with fears of having, or the idea that one has, a serious disease based on the person's misinterpretation of bodily symptoms, that persist despite medical evaluation and reassurance. See Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IV'), 504-07 (4th Ed. 2000). Plaintiff's counsel contends that his client's allegations of chest pain, feet swelling and her other physical impairments are attributed to the LPC's diagnosis of hypochondriasis, rather than actual physical impairments as testified by his client, and that the ALJ erred in failing to address plaintiff's hypochondriasis.

The Court finds no merit in counsel's claim that the ALJ failed to address symptoms of hypochondriasis. First, the ALJ necessarily determined the disability claim that plaintiff actually presented to him at the hearing, that is, swelling in her extremities, chest pains, heart problems [R. 346] and severe anxiety disorder [R. 353]. In the instant appeal, plaintiff does not challenge the ALJ's rejection of plaintiff's claim of physical disability based on swelling in her extremities, chest pains, and heart problems. The ALJ identified medical evidence in the record which attributed her

9

purported physical disability to a physician's diagnosis that her physical ailments are caused by stress, panic attacks and anxiety, and not the result of any physical limitation. The ALJ entered the following findings:

> Ms. Daniel alleged an onset of January 1, 2005. On October 6, 2005, she informed Adel Malati, M.D. that she had been having multiple panic and anxiety attacks in the past year. The attacks were accompanied by chest pain that radiates to her neck and shoulders. She identified heavy lifting and stress as triggers for the chest pain which lasted from just 5 minutes to an entire month. (Exhibit 2F, p. 1). Dr. Malati observed that Ms. Daniel had no difficulty sitting, standing, or lying down. She walked in a normal gait without any assistive devices. There was a full range of motion in all joints and she showed a good grip with 5/5 strength (Exhibit 2F, pgs. 1-4).

[R. 18].

Second, in considering the evidence, the ALJ found "that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R. 19]. In his assessment of plaintiff's limitations and RFC, the ALJ relied on Dr. Malati's observation that plaintiff had "no difficulty sitting, standing, or lying down," and "[s]he also is preoccupied with health issues and worries that people are watching her (Exhibit 13F, p. 14)." [R. 19]. At this point, the ALJ addressed the symptoms of hypochondriasis, in finding that plaintiff exaggerates the impact of her physical and mental impairments. In evaluating this medical evidence, the ALJ concluded that "these deficits alone do not constitute disability." [R. 19]. The ALJ's conclusions are supported by the medical evidence he referenced and substantial evidence in the record. As previously mentioned, the record as a whole supports the ALJ's finding that plaintiff's severe impairments are general anxiety disorder and panic attack which are triggered by stimulus

10

such as stress and heavy lifting.[6]   The ALJ properly addressed plaintiff's exaggerated physical ailments in the context of the claims plaintiff asserted in her application and at the hearing.

Third, the ALJ stated that he considered all the claimant's "mental impairments" singly and in combination and found that although her general anxiety disorder and panic attacks are severe, they did not meet or medically equal the criteria of listings in 12.04 or 12.06, because they failed to meet at least two of the limitation criteria in Paragraph B:

    (1) Marked restriction of activities of daily living; or

    (2) Marked difficulties in maintaining social functioning; or

    (3) Marked difficulties in maintaining concentration, persistence, or pace; or

    (4) Repeated episodes of decompensation, each of extended duration.

or, Paragraph C:  "resulting in complete inability to function independently outside the area of one's home."  20 CFR Part 404, Subpart P, Appendix 1.

Plaintiff admits that "hypochondriasis" is considered to be a Somatoform Disorder included within the Listed Impairments in section 12.07.  Although the ALJ found that plaintiff's mental

---

[6] Plaintiff's medical records support the ALJ's finding that anxiety and panic attacks trigger plaintiff's physical complaints.  For example, plaintiff's treating physician enters the following notations regarding plaintiff's condition:  on December 29, 2005, "very anxious-having panic attack," and "Father ill & needs surgery."  [R. 159]; on August 27, 2004, "Stress out - Panic attack" and "stressed out, Father sick, starts crying & develops trouble breathing."  [R. 172]; on June 8, 2004, "stressed out" and "heart kinda hurting" [R. 174]; on May 18, 2004 "Stressed out" and "having trouble getting off couch" [R. 175]; on April 13, 2004 "Stressed out -Shaky-Chest tightens up from stress" [R. 176]; on January 6, 2004 "Pressure on chest, worse when stressed" and "Husband in jail for DUI" [R. 178]; and a lengthy explanation on November 27, 2001, "The patient does state she is under a lot of stress as she has a son who is in trouble.  He is smoking cigarettes, drinks alcohol and smokes pot.  He left home and is not going to school.  She does not know where he is at this time. He has done this before and his father has brought him back home but then he leaves again.  The patient is also upset stating she got a speeding ticket the other day and does not feel she deserved this and this is bothering her" and 'I feel that her anxiety is overwhelming and this is causing her chest discomfort.'" [R. 188-189].

11

impairments (general anxiety disorder and panic disorder) were severe, he also found that considering all her mental impairments, singly and in combination, (which could only be plaintiff's exaggerated physical disabilities and paranoia) those conditions did not medically equal the Listed Impairments in Paragraph B, of section 12.04 (Affective Disorders) or Paragraph B, section 12.06 (Anxiety Disorders).  Thus by his very words, the ALJ considered the reasonable physical impact resulting from all plaintiff's mental impairments.  Since the Listed Impairments in Paragraph B, section 12.07 (Somatoma Disorders) are the same, as those contained in Paragraph B, for sections 12.04 and 12.06, the fact that the ALJ did not separately address hypochondriasis is, at best, harmless error because of the similarity in their Listing requirements.  See Petree v. Astrue, 260 Fed.Appx. 33, 40 (10th Cir. 2007) (unpublished).[7]

As to her third assignment of error, plaintiff claims the ALJ omitted discussing evidence which supports plaintiff's mental disability.  First, plaintiff contends the ALJ erred in not mentioning a global assessment function ("GAF") score of 45 on June 24, 2006, and a 49 GAF score on June 27, 2007 during a psycho-social evaluation performed at CREOKS as part of plaintiff's SSI application and evaluation.  [Dkt. # 15 at 6].  Plaintiff's counsel also relies on the testimony of the vocational expert who described the functional assessment of a person with a GAF score of 45, as having serious problems in maintaining work like activities and activities with daily living.  [R. 376]. The Court finds that the ALJ did not error in failing to address plaintiff's GAF scores of 45 and 49 in his RFC assessment, because the ALJ did take into consideration medical evidence of plaintiff's physical and psychological evaluation, which are similar to those used to arrive at a GAF score.  To

---

[7]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1:  10th Cir. R. 32.1.

support his RFC evaluation, the ALJ relied on medical evidence in the record.  The ALJ further

explained why he discounted other evidence in the record which supported her claim.  Specifically

the ALJ found:

> Ms. Daniel had no difficulty sitting, standing, or lying down.  She walked in a normal gait
> without any assistive device. The claimant told Dr. Crall that she performed general
> housekeeping tasks.  Mentally, the claimant does appear to have difficulty keeping her focus.
> She is also preoccupied with health issues and worries that people are watching her. (Exhibit
> 13F, p. 14).  Yet, these deficits alone do not constitute disability.  The claimant alleges panic
> attacks over several years.  But Dr. Crall wrote that Ms. Daniel was very poor in her
> description of her alleged panic attack symptoms.  A Family Medical Clinic physician, David
> Chorley, D.O., wrote Ms. Daniel was 100% disabled from her chronic anxiety and
> depression.  However, Dr. Chorley's records do not entirely support this conclusion.  For
> example, in a Client Assessment Record of April 15, 2005, Ms. Daniel is noted capable of
> cleaning and cooking for at least a few days a week. (Exhibit 11F, p.3).  The claimant denied
> having bipolar disorder although the Family Medical Clinic diagnosed her with it.  (Exhibit
> 11F, p.1).  Finally, the claimant's representative did not furnish as promised at the hearing
> the residual functional capacity assessment of the claimant by her treating physician.

[R. 19].  The ALJ gave specific reasons for his findings with references to the record in his RFC

determination.  Moreover, the record shows a difference of opinion among those clinicians who

evaluated plaintiff's physical and mental condition, and thus the evidence was controverted.  The

Tenth Circuit has stated that, "a low GAF score does not alone determine disability, but it is instead

a piece of evidence to be considered with the rest of the record."  Petree v. Astrue, 260 Fed.Appx.

at 42 citing Howard v. Comm'r of Soc.Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score

may be considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's

accuracy.").[8]  Plaintiff contends that her GAF scores of 45 and 49 qualifies her for disability.  A

score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation), severe obsessional rituals,

---

[8]  A GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's
judgment of the individual's overall level of functioning. See American Psychiatric Association,
Diagnostic & Statistical Manual of Mental Disorders 32 (4th Ed. 2000).

frequent shoplifting, or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. However, the clinicians who rated plaintiff's GAF score did not indicate that she could not work. [R. 117-119]. Because a score of 49 may not relate to plaintiff's ability to work, the score, standing alone, without further explanation, "does not establish an impairment severely interfering with an ability to perform basic work activities." Eden v. Barnhart, 109 Fed.Appx. 311, 314 (10th Cir. 2004) (unpublished) (a GAF score of 50, standing alone, without further explanation, does not establish an inability to perform basic work activities.)

The RFC assessment relied on by the ALJ is supported by substantial evidence in the record. On October 12, 2005, Dr. Crall conducted a mental status examine and determined that plaintiff has the ability to manage funds independently. [R. 136, 140]. Dr. Crall observed that plaintiff "was alert, oriented, pleasant and cooperative throughout the evaluation. Her speech was logical and fully intelligible." [R. 136]. No difficulties with posture, gait, or motor behaviors. She possessed a driver's license. [R. 136].

Plaintiff's SSI application forms were completed by her mother. Plaintiff contradicted her mother's statement that she was incapable of taking care of herself, stating that her mother was angry with her at the time she prepared the forms. [R. 137]. Dr. Pearce, noted that even though Dr. Crall opined that overall plaintiff's ability to complete activities appropriately and within a timely manner was likely poor, "she was able to solve single digit math problems in her head, she could explain the meaning of common proverbs and seemed to have good judgment." [R. 146]. An inconsistent notation was made in plaintiff's medical records by her treating physician on March 18, 2004. Initially her doctor writes that plaintiff is "stating that she needs a written note stating that she is disable & can not work." Followed by her doctor's observation that she is "feeling pretty good."

14

[R. 177]. Plaintiff merely relies on inconsistent GAF scores, and fails to cite substantial evidence in the record which discredits the ALJ's findings supporting his R.F. assessment which is inconsistent with those scores.

Plaintiff next faults the ALJ for referencing a psycho-social evaluation on November 22, 2004, by CREOKS Mental Health Services showing that plaintiff "had no cognitive impairment" but omitted any reference that it was reduced on June 24, 2006 to "mild cognitive impairment." Once again, plaintiff fails to demonstrate how the omission of a subsequent assessment of "mild cognitive impairment" would negate the ALJ's RFC findings. Specifically, the ALJ found that plaintiff has mild difficulties in social functioning and moderate difficulties in concentration, persistence or pace. The inclusion of these restriction is indicative that plaintiff has "mild cognitive impairment" rather than "no cognitive impairment." The ALJ also took these limitations into consideration in finding that plaintiff is limited to simple work, under routine supervision. Thus, the plaintiff fails to show how a finding of "mild cognitive impairment" would impair her ability to perform simple work under routine supervision. Moreover, although the ALJ did not specifically mention the second cognitive assessment, he was required to do so only if it contained significantly probative evidence contrary to the ALJ's findings, which it did not. As previously stated, although the ALJ did not mention the second evaluation in his decision, it appears that he did consider plaintiff's mild cognitive impairment in making his RFC determination. As such, the RFC assessment is supported by substantial evidence. See e.g., Bridges v. Barnhart, 162 Fed.Appx. 828, 831 (10th Cir. 2006) (unpublished).

As her fourth assignment of error, plaintiff contends the ALJ erred in evaluating plaintiff's credibility in light of her emotional problems, and in ignoring her mother's testimony regarding

plaintiff's inability to function.   In assessing plaintiff's credibility, the ALJ stated:   "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R. 19].  This determination supports the ALJ's finding that plaintiff's medically determinable impairments (general anxiety disorder and panic disorder) trigger physical symptoms but not to the degree of plaintiff testimony (as to intensity, persistence and limiting effects) or otherwise shown by evidence in the records.  In rejecting this finding, plaintiff argues that because her emotional problem is her disability the ALJ erred in discounting her testimony regarding its resulting mental and physical limitation.   However, as discussed above, the record as a whole supports the ALJ's finding that plaintiff's severe impairments are general anxiety disorder and panic attack which are triggered by stress and heavy lifting.   The ALJ properly addressed plaintiff's credibility in determining both the claims raised her application and the reliability of her testimony at the hearing.  Further, again as noted above, the ALJ did not err in failing to mention the testimony of plaintiff's mother, because the mother's testimony was controverted by other evidence of record, especially by comments made by plaintiff during the evaluations performed as part of her SSI application process.   Plaintiff also argues that the ALJ's decision failed to mention any of her mother's testimony in evaluating plaintiff's testimony.  As a general rule:  "In addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  Blea v. Barnhart, 466 F.3d 903, 914 (10th Cir. 2006).  The ALJ did not mention the mother's testimony in his written decision.  As such, it is clear that the ALJ did not rely on her testimony.  The mother's testimony

16

regarding her daughter's total inability to function or take care of herself was controverted by other probative evidence that the ALJ did rely upon.

In elaborating on the plaintiff's functional capacity assessment, which was adopted by the ALJ, Dr. Burnard Pearce opined, "The claimant can perform simple tasks on a routine basis. She can relate to coworkers and supervisors for work purposes. She is able to adapt to simple work situations." [R. 151]. Plaintiff fails to show how the arguments stated in her four issues would impact her ability to perform "simple work under routine supervision" as found by the ALJ in his determination that plaintiff is not disabled within the meaning of the Social Security Act. [R. 16].

### Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 30th day of June, 2009.


_____

T. Lane Wilson
United States Magistrate Judge

17